SILVERMAN, Circuit Judge,
concurring in part and dissenting in part:
Strong, having had his expert precluded for lack of timely disclosure, unabashedly sought to get his expert’s observations into evidence by way of another route. Strong’s declaration says:
I made a mental list of the barriers I encountered, relying on my photographic memory to assist me in remembering those barriers. While I am not able to take measurements myself, I was present while another individual took measurements and photographs of the barriers present at the subject restaurant. That individual brought a gauge to measure door pressure, a measuring stick, a stop watch, and a Smart Tool device that measures slopes so that precise measurements of all the barriers could be taken.
Strong then states that he “reviewed the report of Reed Settles entitled, ‘Rebuttal Comments to Heller Review of Facility,’ dated April 24, 2010, and have learned from said report that [various architectural] barriers continue to exist at the subject restaurant” such as that “[t]he cross slope of the curb cut ramp varies in slope from 2.1% to 2.7% making it difficult for me to travel up the ramp” and that “[t]he landing at the top of the curb cut ramp slopes 3.1%, making it difficult for me to use the landing at the top of the curb cut ramp.” Strong’s declaration also recites other exact measurements taken from Settles’s report.
This is important because in a case claiming a failure to comply with the de *1048 tailed measurements prescribed by the ADA Accessibility Guidelines, exact measurements are required. See Doran v. 7-Eleven, 524 F.3d 1034, 1048 (9th Cir.2008). (“Doran bears the burden of showing a violation of the ADA Accessibility Guidelines, the substantive standard of ADA compliance, [citation omitted] That Doran scraped his knuckles, unsupported by any measurements, is insufficient to demonstrate that 7-Eleven’s aisles do not comply with the thirty-six-inch clearance that the Accessibility Guidelines mandate.”)
As the majority notes, it is possible for two people to take measurements together and thus, for both to have personal knowledge of what is observed, but tellingly, that is not what Strong’s declaration says occurred. It is also possible that the other individual called out the measurements as they were taken (arguably a statement of “present sense impression”), but that is not what Strong says occurred, either. Strong says only that he was “present” when someone else took the measurements, and that he read Settles’s report. Stuck with the declaration we actually have — and not the one we may wish we had — we are left with the out-of-court assertions of the individual who actually took the measurements, as retold by Strong, to prove the truth of the matter asserted.
The problem is not that “we’ve become too expert-prone,” as the majority quips. The problem is that Strong is simply repeating what the declarant communicated to him — classic hearsay whether the declarant is an expert or not. And it is no less hearsay just because Strong was “present” when the other person saw what he purported to observe. Strong’s presence entitles him to testify to what he saw, not to what the other individual saw. A declaration in support of or in opposition to a motion for summary judgment “must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.” Rule 56(c)(4), Federal Rules of Civil Procedure.
This inadmissible hearsay stands in contrast to Strong’s testimony about his own observations of the signage and the configuration of the restroom, first-hand perceptions that I agree are sufficient to raise factual questions precluding summary judgment. I would allow those claims to go forward, but not the claims dependent on the observations of the absent declarant.